IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT FRANK KINSEY | § | |
| v. | § | CIVIL ACTION NO. 6:22cv465 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Petitioner Robert Kinsey, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this petition for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. The petition has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and Local Rule CV-72 of the Local Rules of Court for the Eastern District of Texas.

**I. Procedural Background**

The state court records show that Petitioner was charged with sexual assault and pleaded guilty pursuant to a plea bargain agreement. On September 11, 2018, he was placed on deferred adjudication probation for ten years. (Docket no. 12-1, p. 7).

The State subsequently filed a motion and amended motion to adjudicate guilt, alleging that Petitioner had violated the terms and conditions of his probation. The amended motion, filed November 9, 2020, states that Petitioner's conditions of community supervision included provisions that (1) he was not to go on the premises of or patronize sexually oriented establishments or purchase, own, or possess pornographic materials, and (2) he was prohibited from using the internet to access obscene material, to access commercial social networking sites, to communicate with anyone regarding sexual relations with a person younger than 17 years of age, or to communicate with anyone whom he knows to be younger than 17 years of age. However, the amended motion

alleged that Petitioner had accessed and viewed online pornography from August of 2019 through March of 2020. Petitioner says that he initially pleaded "not true" to the allegations but then changed to a plea of "true" on the advice of counsel. He was adjudicated guilty on November 17, 2020, receiving a sentence of 12 years in prison. (Docket no. 12-1, p. 9).

Plaintiff took a direct appeal from the adjudication of guilt, but complained only of the assessment of costs, in that he challenged a $25.00 time payment fee and an additional time payment fee of $15.00.  The Twelfth Judicial District Court of Appeals struck the $25.00 fee and determined that the additional $15.00 fee had not been assessed.  The Court of Appeals consequently modified the judgment to reflect the correct cost assessment and affirmed the judgment as modified. *Kinsey v. State*, slip op. no. 12-21-00014-CR, 2021 WL 4203101 (Tex. App.-Tyler, September 15, 2021, no pet.).

Petitioner signed his state habeas petition on June 15, 2022, and it was filed on June 23, 2022. (Docket no. 12-1, pp. 13, 28). In this petition, Petitioner asserted that: (1) the condition of community supervision prohibiting him from viewing pornography violated his rights under the First Amendment, and he only "viewed" pornography and did not "possess" it; (2) the second condition of community supervision he was alleged to have violated could not be imposed upon him by statute, and he was prohibited from possessing "obscene" material but the State only alleged that he had accessed "pornography," which is not illegal; and (3) he received ineffective assistance of counsel at his revocation hearing from his attorney, Joe Murphy.  This petition for state habeas relief was denied by the Texas Court of Criminal Appeals on October 19, 2022, without written order on the findings of the trial court without a hearing and on the court's independent review of the record. (Docket no. 10-19, p. 1).

## II. The Present Federal Habeas Petition

Petitioner signed his federal habeas petition on November 15, 2022. In this petition and a supporting memorandum, he alleged that: (1) the first condition of community supervision which he was alleged to have violated is unconstitutional because it infringed on his right to freedom of

speech and he was not given notice that he would be required to waive his right to free speech; (2) the second condition which he was alleged to have violated is statutorily prohibited and invalid because it did not apply to his offense under the Penal Code and was not reasonably related to his rehabilitation, and thus was beyond the trial court's authority to impose; and (3) Petitioner received ineffective assistance of counsel during his revocation proceeding through counsel's advice to plead "true" to the revocation allegations.

The Respondent has filed an answer arguing that Petitioner's first two claims are barred by the statute of limitations and that his third claim lacks merit. Petitioner has filed two replies arguing that his first two claims are not time-barred and that counsel erred in advising him to plead true because he had viable defenses to those allegations.

## III. The Statute of Limitations

The statute of limitations, set out in 28 U.S.C. §2244(d), reads as follows:

**(1)**    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

    **(A)**    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)**    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    **(C)**    the date on which the constitutional right asserted was recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)**    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)**    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## A. Application of the Law to the Facts

Petitioner's first two allegations concern events from when he was originally given deferred adjudication probation. The Fifth Circuit has explained that under Texas law, a judge may defer the

adjudication of guilt of particular defendants and place them on community supervision if they plead guilty or *nolo contendere*. If the defendant wishes to raise issues related to his guilty plea or placement on community supervision, he must do so on direct appeal from the deferred adjudication order immediately after it is imposed; he may not wait until after he violates the terms of his probation and is adjudicated guilty. *Tharpe v. Thaler*, 628 F.3d 719, 722 (5th Cir. 2010), *citing Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex.Crim.App. 1999).

If the defendant does not appeal at the time of deferred adjudication and later violates a condition of his community supervision, a hearing is held to determine whether the court should proceed to impose a judgment of guilt. If such a hearing is held and the defendant is adjudicated guilty, the court sentences him. *Id.*

The Fifth Circuit has held that the federal statute of limitations for claims arising from an order of deferred adjudication begins to run when the deferred adjudication order becomes final, not when the defendant is adjudicated guilty. *Caldwell v. Dretke*, 429 F.3d 521, 530 (5th Cir. 2005). However, Petitioner argues in his replies that the Supreme Court appeared to call this analysis into question in *Burton v. Stewart*, 549 U.S. 147, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007).

In *Burton*, the petitioner Lonnie Burton received two amended judgments because of re-sentencing issues. Thus, at various times, he was in custody under a 1994 judgment, a 1996 judgment, and a 1998 judgment. In December of 1998, he filed his first federal habeas petition challenging aspects of his conviction which had remained the same under all three judgments. At the time he filed this petition, the 1998 judgment had been entered but had not yet become final.

After the 1998 judgment became final, Burton filed a second federal habeas petition challenging the 1998 sentence. The Supreme Court addressed the question of whether this petition, challenging the 1998 sentence, was successive to the first petition's challenge to the original conviction.

Burton argued that the 1994 judgment was a different judgment than that rendered in 1998, but the Supreme Court stated that "'final judgment' in a criminal case means sentence. The sentence

is the judgment. Accordingly, Burton's limitations period did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review - which occurred well after Burton filed his 1998 petition." *Burton*, 549 U.S. at 156-57. The Supreme Court went on to explain that when Burton filed his first habeas petition, he was in custody pursuant to the 1998 judgment of the state court, even if that judgment was not final for purposes of triggering the limitations period. Consequently, the second habeas petition, which also attacked the 1998 judgment, was successive.

The Fifth Circuit examined the interplay between *Caldwell* and *Burton* in *Tharpe*, observing that *Burton* putatively called the analysis of *Caldwell* into question by emphasizing that the term "judgment" includes both the conviction and the sentence. However, the Fifth Circuit explained that in *Burton*, the question was whether a habeas claim challenging a conviction and a habeas claim challenging a sentence involved two different judgments, to which the Supreme Court answered no.

In *Tharpe*, by contrast, the petitioner was placed on deferred adjudication probation on June 26, 2006, and wrote a letter indicating that he wished to appeal. The appeal was dismissed on January 11, 2007.

After the deferred adjudication order but before the dismissal of the appeal, the State sought revocation of probation and an adjudication of guilt. In December of 2006, a hearing was held in which it was determined that Tharpe had violated the terms of his probation. On January 10, 2007, Tharpe was adjudicated guilty and sentenced to 25 years in prison. He appealed this conviction and sentence, which was affirmed on direct appeal, and he sought discretionary review which was denied. Tharpe also sought state habeas relief, which was denied without written order on May 21, 2008.

Tharpe then filed a federal habeas petition on June 2, 2008, raising seven claims concerning the deferred adjudication order and two claims concerning the subsequent conviction and sentence. The district court, applying *Caldwell*, determined that the seven claims relating to the deferred adjudication order were barred by limitations.

On appeal, the Fifth Circuit said that the analysis in *Burton* is logically limited to claims involving both a conviction and a sentence. The court elaborated as follows:

> The *Burton* Court was asked specifically whether a habeas claim that challenges a conviction and another habeas claim that challenges a sentence involve two different "judgments" for AEDPA purposes. The Court answered "no." In contrast, the question we are asked in the instant case is whether a habeas claim that challenges a deferred-adjudication order and another habeas claim that challenges a conviction and sentence involve two different "judgments" for AEDPA purposes. Ours is an entirely different question, to which—consistent with our holding in Caldwell—we answer "yes." It follows, then, that in dealing with two entirely separate and distinct judgments—one a deferred-adjudication order and the other a judgment of conviction and sentence—we are dealing with two separate and distinct limitation periods under the AEDPA.

*Tharpe*, 628 F.3d at 724.

The Fifth Circuit explained that after the state court entered Tharpe's deferred adjudication order on June 26, 2006, he was in custody pursuant to a state judgment - the deferred adjudication order. This triggered federal habeas jurisdiction under 28 U.S.C. §2254. When the appeal of this order was dismissed, that judgment became final, starting the one-year limitations period with regard to those claims. That limitations period expired before Tharpe sought state habeas corpus relief, and so Tharpe's state habeas petition did not toll any of the limitations period on his deferred adjudication claims. The Fifth Circuit concluded that the district court properly determined that Tharpe's claims concerning the deferred adjudication order were barred by limitations.

The court went on to state that the holding was wholly reconcilable with *Burton* because Tharpe's deferred adjudication order was a separate judgment from his subsequent judgment of conviction and sentence. That subsequent judgment also constituted a final judgment under *Burton* and was thus unaffected, for purposes of the limitations period, by the earlier finality of the deferred adjudication order. Tharpe was in custody first under the deferred adjudication order and then under the conviction and sentence, and so his claims challenging the deferred adjudication order were untimely because the statute of limitations had already expired.

As in *Tharpe*, Petitioner Kinsey was in custody first under the deferred adjudication order of September 11, 2018, and then under the conviction and sentence dated November 17, 2020.

6

Under Texas law, as set out above, an order of deferred adjudication is immediately appealable upon entry of the order, triggering the 30 day limitations period for filing a notice of appeal. As a result, a defendant who pleads guilty and receives deferred adjudication may only appeal issues related to the original plea when the deferred adjudication is originally imposed, not upon revocation. *Manuel*, 994 S.W.2d at 661-62; *United States v. Mills*, 843 F.3d 210, 216-17 (5th Cir. 2016). Because Petitioner's order of deferred adjudication was immediately appealable but he did not take a direct appeal of this order, the order of deferred adjudication became final upon the expiration of his time to do so. 28 U.S.C. §2244(d)(1)(A); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

Texas law provides that a notice of appeal in a criminal case must be filed within 30 days after sentence is imposed or suspended in open court, or after the day the trial court enters an appealable order, or within 90 days after the day sentence is imposed or suspended in open court if the defendant timely files a motion for new trial. Tex. R. App. P. 26.2; *see Williams v. State*, 603 S.W.3d 439, 448 (Tex.Crim.App. 2020). Because Petitioner did not file a motion for new trial from the deferred adjudication order, that order became final when his time to appeal expired, on Thursday, October 11, 2018. His limitations period for claims concerning the deferred adjudication proceedings began to run at that time and expired on Friday, October 11, 2019, absent the operation of other factors.

In this regard, Petitioner does not point to any state-created impediments which allegedly prevented him from seeking habeas corpus relief in a timely manner. Nor does he contend that he is asserting a right which has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

Although Petitioner did file a state habeas corpus petition, this petition was signed on June 15, 2022, over two and a half years after the limitations period had expired. The Fifth Circuit has held that a state habeas petition filed after the federal limitations period has expired does not revive any portion of that period. *Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999). Consequently,

Petitioner's state habeas petition did not toll any portion of the federal limitations period for his claims concerned the deferred adjudication period, which expired on October 11, 2019.

B. Actual Innocence

While a "persuasive showing" of actual innocence can serve as a gateway through which a petitioner may pass to evade the statute of limitations, *see McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the petitioner does not meet the threshold requirement of actual innocence unless he shows that in light of newly discovered evidence, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), the Supreme Court stated that examples of such "new reliable evidence" include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial. Thus, the actual innocence exception is limited to cases in which the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).

Petitioner does not contend that he is actually innocent of the crime of conviction, much less present any newly discovered evidence in light of which no reasonable juror would have found him guilty beyond a reasonable doubt. In any event, this Court and others have held that because the required showing is one of factual innocence, a petitioner's guilty plea forecloses a claim of actual innocence for limitations purposes. *Gilmer v. Director, TDCJ-CID*, civil action no. 6:19cv208, 2021 WL 5088261 (E.D.Tex., July 6, 2021), *Report adopted at* 2021 WL 4189740 (E.D.Tex., September 15, 2021), *aff'd through denial of certificate of appealability*, slip op. no. 21-40837 (5th Cir., May 10, 2022); *see also Scott v. Director*, TDCJ-CID, civil action no. 6:19cv605, 2020 U.S. Dist. LEXIS 244304, 2020 WL 7776793 (E.D.Tex., October 2, 2020), *Report adopted at* 2020 U.S. Dist. LEXIS 244163, 2020 WL 7773573 (E.D. Tex., December 29, 2020); *Mayo v. Quarterman*, civil action no. 3:05cv505, 2006 U.S. Dist. LEXIS 102935, 2006 WL 3755221 (N.D. Tex., Dec. 21, 2006). Because Petitioner pleaded guilty, he is foreclosed from the actual innocence exception on this basis as well.

8

C. Equitable Tolling

The Fifth Circuit has held that the district court has the power to equitably toll the limitations period in "extraordinary circumstances." *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998). In order to qualify for such equitable tolling, the petition must present "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (habeas petitioner may be entitled to equitable tolling only if he shows that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing).

In making this determination, the Fifth Circuit has held that proceeding *pro se*, illiteracy, deafness, lack of legal training, and unfamiliarity with the legal process are insufficient reasons for equitable tolling of the statute of limitations. *Felder*, 204 F.3d at 173; *see also Fisher v. Johnson*, 174 F.3d 710, 713 n.11 (5th Cir. 1999). The petitioner has the burden of establishing that equitable tolling is warranted. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on rehearing*, 223 F.3d 797 (5th Cir. 2000).

Equitable tolling cannot be used to thwart the intent of Congress in enacting the limitations period. *See Davis*, 158 F.3d at 811. At the same time, the Court is aware that dismissal of a first federal habeas petition is a "particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

The Fifth Circuit has explained that equitable tolling is not intended for those who "sleep on their rights." *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). This comports with the Supreme Court's holding that "reasonable diligence" is required for entitlement to equitable tolling. *Holland*, 560 U.S. at 649; *see also Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013).

Petitioner's deferred adjudication order was rendered on September 11, 2018. From that date, he waited over three and a half years before raising his first challenge to this order in a state habeas corpus proceeding. He presents no reason for this delay, and this extraordinary lapse of time

plainly shows a lack of reasonable diligence. *Stroman v. Thaler*, 603 F.3d 299, 301-02 (5th Cir. 2010); *see also Hardy v. Quarterman*, 577 F.3d 596, 698 (5th Cir. 2009) (noting that the petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control, and delays of the petitioner's own making do not qualify).  Petitioner's first two claims, concerning the deferred adjudication probation proceeding, are barred by the statute of limitations.

## IV. Ineffective Assistance of Counsel

A. Background

Petitioner asserts that he received ineffective assistance of counsel at the revocation proceeding in that his attorney, Joe Murphy, advised him to plead true to the revocation allegations despite having viable defenses which Petitioner asserts that Murphy failed to investigate.  Because this claim concerns the revocation proceeding, it is not barred by limitations.

The State's original motion to adjudicate guilt alleged that the terms and conditions of Petitioner's community supervision included a provision reading "do not go on the premise of or patronize sexually oriented establishments. Do not purchase, own, or possess pornographic materials." The State alleged that Petitioner accessed and viewed online pornography between August through December of 2019 and January through March of 2020. (Docket no. 12-6, p. 15).

A hearing on the State's original motion to adjudicate guilt was held on October 27, 2020. (Docket no. 12-2, pp. 16ff).  At this hearing, the State called Christian Duran, Petitioner's probation officer.  Duran testified that in a phone call on March 23, 2020, Petitioner admitted that he had been viewing pornography online for some seven to eight months.

On cross-examination by Murphy, Duran acknowledged that Petitioner had been doing well on probation. He said that he had instructed Petitioner to tell him about any problems, and that Petitioner told him about a problem he had with viewing pornography.  Duran stated that Petitioner had not given him any reason for concern until the admission of viewing pornography, and if Petitioner had not called him, he, Duran, would not have known about it.  (Docket no. 12-2, pp. 37-

38). Duran also acknowledged that there was a difference between viewing something and possessing it. (Docket no. 12-2, p. 48).

On redirect examination, Duran stated that when Petitioner viewed pornography, he did so on a phone or computer which was in his possession. Duran observed that Petitioner told him that he had viewed pornography over a course of seven or eight months, periodically throughout each week, and each time Petitioner did so, it was a violation of probation.

After this hearing, the State filed an amended motion to adjudicate guilt. This motion included the condition of community supervision set out in the original motion and added a condition stating "you are prohibited from using the internet for the following reasons: to access obscene material, to access commercial social networking sites, to communicate with anyone regarding sexual relations with a person younger than 17 years of age, or to communicate with anyone the offender knows is younger than 17 years of age." (Docket no. 12-6, pp. 18-19). Petitioner was alleged to have violated these conditions.

A hearing was held on the amended motion to adjudicate on November 10, 2020. At this hearing, Petitioner changed his plea from not true to true. He testified that he had religious experiences which convinced him that he could not break free from sexual addiction unless he confessed his actions, and so he did. (Docket no. 12-3, p. 32). He stated that he was pleading true to the allegations because they were true and for no other reasons, and that he understood that by pleading true, the Court could revoke his deferred adjudication, find him guilty based on his original plea, and assess punishment. (Docket no. 12-3, p. 23). At the conclusion of the hearing, the Court granted the motion to adjudicate guilt, revoked Petitioner's probation, found him guilty, and sentenced him to 12 years in prison. (Docket no. 12-5, pp. 118-19).

Murphy filed an affidavit in connection with Petitioner's state habeas petition. (Docket no. 12-6, p. 56). This affidavit states that when the original motion to adjudicate guilt was filed, Petitioner was adamant that he wanted to plead true. Evidence was offered in an attempt to mitigate the admitted violation. Murphy stated that the condition which Petitioner violated was a standard

term and condition for individuals who have admitted to the crime of sexual assault and been granted probation. Petitioner was aware of this condition and signed it on September 10, 2018.

The trial court made findings of fact and conclusions of law in connection with Petitioner's state habeas petition. (Docket no. 12-6, p. 63). These findings and conclusions included determinations that: (1) the probation conditions were constitutional; (2) Petitioner did not object when these conditions were imposed or appeal from their imposition; (3) the free speech argument has been specifically rejected as being inapplicable to the temporary conditions of probation; (4) the probation conditions were authorized by law; (5) these conditions were related to his offense and future criminality; (6) community service conditions are not invalid simply because they affect a defendant's ability to exercise constitutionally protected rights; (7) the State proved the violations through Duran's testimony and could have done so even had Petitioner not pleaded true; (8) Petitioner was adamant that he wished to plead true; (9) Petitioner testified that he had no complaints about Murphy's representation and agreed that he had reviewed the State's motions with Murphy and understood them; and (10) the strategy of pleading true and offering mitigating evidence was reasonable and effectively dictated by Petitioner's confession to his probation officer. These factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Topletz v. Skinner*, 7 F.4th 284, 292-93 (5th Cir. 2021).

Petitioner asserts that the amended motion to adjudicate presented legal arguments from the State that Petitioner had violated possession and obscenity laws as defined by the Texas Penal Code. He contends that the only evidence offered by the State concerning the possession allegation was testimony from Christian Duran, Petitioner's probation officer, that Petitioner had "self-admitted" to accessing four online websites. Petitioner says that no additional information was presented concerning the obscenity allegation.

Petitioner argues that Murphy failed to investigate the facts of the case and the law relating to obscene materials. He claims that Murphy would have discovered that the possession allegation was unconstitutional and that the obscene materials allegation was invalid and could not be proven

by the State because there were no actual materials to present to determine whether or not they were "obscene."

Petitioner further contends that pornography is protected speech under the First Amendment, rendering the first condition unconstitutional. Even were the requirement not unconstitutional, Petitioner maintains that the charge lacked legal sufficiency because he did not "possess" the pornographic materials, but simply "viewed" them. With regard to the second allegation, Petitioner points to the definition of obscenity in Texas Penal Code art. 43.21 as saying that the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex, depicts or describes patently offense representations or descriptions of ultimate sex acts, and taken as a whole, lacks serious literary, artistic, political, and scientific value. Petitioner argues that there was no evidence that he had viewed "obscene" materials but only "pornographic" ones, and pornography is not illegal.

Finally, Petitioner contends that he suffered a constructive denial of counsel on appeal because Murphy advised him to plead "true," which he says was erroneous advice, and this advice effectively prevented him from appellate review on the sufficiency of the evidence.

B. Legal Standards on Ineffective Assistance

In order to prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 678, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. *Del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007). The burden of proving ineffective assistance of counsel, including the burden of identifying the acts

or omissions of counsel which are alleged not to have been the result of reasonable professional judgment, is on the petitioner. *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020). General statements and conclusory charges of ineffectiveness will not suffice. *Green v. McGougan*, 744 F.2d 1189, 1190 (5th Cir. 1984).

A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. This requires a substantial, not merely a conceivable, likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

In the context of a guilty plea, the Supreme Court and the Fifth Circuit have held that the defendant must show that counsel provided ineffective assistance and that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1986). The petitioner must also show that going to trial would have given him a reasonable chance of obtaining a more favorable result. *King v. Davis*, 898 F.3d 600, 604-05 (5th Cir. 2018). This assessment turns partially on a prediction of what the outcome of a trial might have been. *Ward v. Dretke*, 420 F.3d 479, 487 (5th Cir. 2005).

Mere allegations from a petitioner that he would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he would have actually done so. *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988); *Wolfe v. Puckett*, 780 F.Supp. 408, 416 (N.D. Miss. 1991). Furthermore, the prejudice prong of the ineffectiveness test means that even where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).

Counsel has wide latitude in making tactical decisions, including formulating a strategy which was reasonable at the time. *Strickland*, 466 U.S. at 689; *Harrington v. Richter*, 562 U.S. 86, 107, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This means, for example, that it is reasonable trial strategy for counsel to try to cast "pervasive suspicion of doubt [rather] than to try to prove a certainty that exonerates." *Id*. at 109.

14

The Fifth Circuit has explained that a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011). This means that defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017), *citing Strickland*, 466 U.S. at 690. A court reviewing those choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have for proceeding as he did. *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012).

This assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time; there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689-90.

In reviewing counsel's performance through the lens of an ineffective assistance claim, the Supreme Court has explained as follows:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, *supra*, 350 U.S. [91, 101, 76 S.Ct. 158, 100 L.Ed.83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See*

15

Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

*Strickland*, 466 U.S. at 689–90.

C. Application of the Standards to the Facts

Petitioner asserts that counsel was ineffective in advising him to plead true because he had viable defenses to the allegations in the amended motion to adjudicate guilt. At the hearing, Petitioner testified that he was pleaded true to the allegations because they were true and for no other reason.

The Supreme Court has stated that solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). As a result, the petitioner faces the heavy burden of proving that he is entitled to relief. *DeVille v. Whitley*, 21 F.2d 654, 659 (5th Cir.1994). The critical question is whether the entry of the plea of true was knowing and voluntary, and in this, the petitioner has failed to overcome the evidence of his own words. *See United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir.1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985) (to be entitled to evidentiary hearing on claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person").

Here, Petitioner has offered nothing to overcome the evidence of his own words or to show that the entry of the plea of true was anything other than his own voluntary act. This is underscored by the state court's unrebutted factual finding that Petitioner was adamant that he wanted to plead true. Petitioner has failed to show that his plea of true resulted from ineffective assistance of counsel rather than his own desire to plead true and because the allegations were in fact true.

Even were this not the case, Petitioner has failed to show that counsel's strategy of conceding the violations - of which Petitioner had already advised his probation officer - and seeking

16

mitigation was unreasonable. Although Petitioner contends that counsel should have challenged the first community supervision condition as unconstitutional, such a challenge would have failed under Texas law. The Texas Court of Criminal Appeals has held that community supervision is not a right but a contractual privilege, and the conditions of such supervision are terms of the contract entered into between the trial court and the defendant. In entering into the contractual relationship without objection, the defendant has affirmatively waived any rights encroached upon the terms of the contract, and a defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial about conditions which he finds objectionable. *Speth v. State*, 6 S.W.3d 530, 534-35 (Tex.Crim.App. 1999).

The Northern District of Texas has explained that community supervision conditions are not necessarily invalid simply because they affect a defendant's ability to exercise constitutionally protected rights, and while First Amendment protections of freedom of expression apply to probationers, restrictions may be justified by governmental interests such as advancing the probationer's rehabilitation and protecting the public from recidivism. *Douglas v. Thaler*, civil action no. 4:12cv528, 2012 WL 6619475 (N.D.Tex., December 19, 2012), *citing United States v. Locke*, 482 F.3d 764, 768 (5th Cir. 2007). A court granting probation may impose reasonable conditions which deprive the offender of some freedoms enjoyed by law-abiding citizens. *United States v. Knights*, 534 U.S. 112, 119, 112 S.Ct. 587, 151 L.Ed.2d 497 (2001). The court thus rejected the petitioner's assertion that punishing him for possession of adult pornography in his private residence violated his First Amendment rights.

In *Carroll v. State*, slip op. no. 06-18-00052-CR, 2018 WL 562 9813 (Tex.App.-Texarkana 2018, pet. ref'd), the appellant complained that the terms of his community supervision prohibited him from possessing pornographic materials, but the term "pornography" lacked the necessary specificity to enable him to comply. The court of appeals stated that if appellant had difficulty understanding the term, he should have brought this to the trial court's attention when the conditions of community supervision were originally imposed.

17

Here, Petitioner entered into a contract with the trial court concerning the conditions of his community supervision and thus waived any rights upon which this contract may have encroached, including First Amendment rights. Even had he not waived these rights, Petitioner did not object to any alleged First Amendment violation at the time that the conditions of community supervision were imposed and thus cannot challenge the alleged violation for the first time at a later date.

Petitioner also complains that counsel should have discovered that the obscene materials allegation was invalid and could not be proven because there were no actual materials to present to determine whether or not they were "obscene." The trial court found as a fact that had Petitioner not pleaded true, the State could easily have presented evidence of the contents of the pornography websites which Petitioner had admitted to viewing, and Petitioner did not offer any facts showing that these websites which he admitted to viewing did not contain pornographic or obscene materials. The fact that Petitioner pleaded true, as he wished to do, meant that the State did not have to and in fact did not present specific evidence of obscenity at the adjudication hearing, but as the trial court found, this did not mean that the State could not have done so had Petitioner not pleaded true.

Nor has Petitioner offered anything to suggest that counsel's strategy of pleading true and offering mitigating evidence was unreasonable, particularly in light of the fact that Petitioner himself had advised his probation officer that he had viewed pornography over a period of several months. *See, e.g.*, *Runnels v. Davis*, 664 F.App'x 371, 376-77, 2016 U.S. App. LEXIS 19886 (5th Cir., November 3. 2016) (in capital case, strategy of pleading guilty to the murder and then seeking to mitigate by contesting future dangerousness was reasonable); *Acord v. Thaler*, civil action no. 4:12cv159, 2012 U.S. Dist. LEXIS 128477, 2012 WL 3941804 (N.D.Tex., August 10, 2012), *Report adopted at* 2012 U.S. Dist. LEXIS 128286, 2012 WL 3941781 (N.D. Tex., September 10, 2012) (strategy of being forthcoming about the offense, prisoner's criminal history, his substance abuse problem, and diagnosis of bipolar disorder, in an effort to mitigate punishment, was a sound trial strategy given that prisoner had already pleaded guilty to the offense and true to the repeat offender notice).

18

A review of the record demonstrates that Petitioner offered nothing to suggest that had counsel's advice been different, he would not have pleaded true, but would have insisted on defending the allegations made in the State's amended motion to adjudicate guilt. Nor has he offered anything to suggest that counsel's strategy was unreasonable or that but for counsel's actions, the result of the proceeding would likely have been different. Petitioner's contention that counsel deprived him of his appellate rights by pleading true lacks merit because counsel's strategy was reasonable, as discussed above, and Petitioner has not pointed to any viable grounds which he could have raised on appeal had counsel not advised him to plead true. *Cf. Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991) (in order to claim ineffective assistance of counsel on appeal, the petitioner must show that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal). Petitioner's claim of ineffective assistance of counsel is without merit.

## V. Conclusion

Title 28 U.S.C. § 2254(d) provides that in order to be granted a writ of habeas corpus in federal court, a petitioner must show that the state court's adjudication of his claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

An "unreasonable" application of federal law is different from an "incorrect" application of federal law. *Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). This means that a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly; rather, the decision must be "objectively unreasonable," a standard which creates a substantially higher threshold for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

The "contrary to" clause of § 2254(d)(1) applies when a state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Supreme Court on materially indistinguishable facts. The "unreasonable application" clause of § 2254(d)(1) applies when the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013), (citations omitted). The AEDPA thus imposes a "highly deferential standard for evaluating state court rulings" and "demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773, 130 S.Ct. 1855 (citations omitted).

In this regard, the Fifth Circuit has explained that "federal habeas review under AEDPA is therefore highly deferential. The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim." *Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016).

In the context of analyzing claims of ineffective assistance of counsel, the Supreme Court has explained the standards created by *Strickland* and by 28 U.S.C. §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. *Harrington*, 562 U.S. at 105.

Application of this doubly deferential review is different from asking whether defense counsel's performance fell below the *Strickland* standard. The question is not whether the federal court believes that the state court's determination under *Strickland* was incorrect, but whether that determination was unreasonable - a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.3d 251 (2009). This is because the state court must be granted a deference and latitude which is not in operation when the case involves review under the *Strickland* standard. Even a strong case for relief does not itself mean that the state court's contrary conclusion was unreasonable; rather, in order to obtain habeas corpus relief, the petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Druery v. Thaler,* 647 F.3d 535, 539 (5th Cir. 2011).

Petitioner has failed to show that the Texas Court of Criminal Appeals' adjudication of his claims through the denial of relief amounted to a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Nor has he shown any basis upon which to consider his time-barred claims. His petition for habeas corpus relief is without merit.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The prerequisite for a certificate of appealability is a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Petitioner has not shown, nor does the record indicate, that jurists of reason could disagree with the district court's resolution of his claims or that the issues presented are adequate to deserve encouragement to proceed further.  Consequently, he is not entitled to a certificate of appealability.

<u>RECOMMENDATION</u>

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice. It is further recommended that a certificate of appealability be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 19th day of April, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE